UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
CRISTINA FIERRO

                        Plaintiff,

       - against –

LAWRENCE TAYLOR

                    Defendant.
-----------------------------------------------------------------------x

Index No.:
1:11-cv-08573-BSJ

Hon. Barbara S. Jones

# MEMORANDUM OF DEFENDANT LAWRENCE TAYLOR
## IN SUPPORT OF MOTION TO DISMISS
## THE COMPLAINT

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT……………………………………………….. 2

STATEMENT OF FACTS……………………………………………………… 4

ARGUMENT……………………………………………………………………… 8

I.    THE TRAFFICKING VICTIMS PROTECTION ACT 18 U.S.C.
§1595(a) IS WHOLLY INAPPLICABLE TO MR.TAYLOR…………... 6

    A.    18 U.S.C. §1595(a) IS NOT APPLICABLE TO MR. TAYLOR
BECAUSE HE DID NOT "PARTICIPATE IN A VENTURE"
WITH A PERSON THAT HE KNEW WAS ACTING IN
VIOLATIONS OF THE TRAFFICKING VICTIMS
PROTECTION ACT………………………………………….…... 7

    B.    CONGRESS DID NOT INTEND TO PENALIZE INDIVIDUALS
LIKE MR. TAYLOR UNDER18 U.S.C. §1591(a)…….…………... 11

    C.    PLAINTIFF'S COMPLAINT FAILS TO ALLEGE THE
NECESSARY STATUTORY ELEMENTS REQUIRED IN
18 U.S.C. §1595 AND PLAINTIFF'S FAILURE IS INTENTIONAL
AND PREJUDICIAL TO DEFENDANT…………………………... 13

    D.    18 U.S.C. §1591(a) IS NOT APPLICABLE TO MR. TAYLOR
BECAUSE "CUSTOMERS" ARE INTENTIONALLY
EXCLUDED FROM THE STATUTE……………………………… 15

II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION TO HEAR
PLAINTIFF'S FIRST CAUSE OF ACTION – VIOLATING §1595(a) OF
THE TRAFFICKING VICTIMS PROTECTION ACT…..……………….. 17

    A.    MR TAYLOR DID NOT CROSS STATE LINES FOR PURPOSES
OF HUMAN TRAFFICKING AND PLAINTIFF DID NOT CROSS
STATE LINES IN ORDER TO REACH MR. TAYLOR……..…….. 17

    B.    MR. TAYLOR DID NOT AFFECT INTERSTATE COMMERCE
BECAUSE HE DID NOT KNOWINGLY ENTER INTO A
VENTURE WITH A HUMAN TRAFFICKER…………………….. 20

III.   THE STATE CLAIMS SHOULD BE DISMISSED FOR LACK OF
       SUBJECT MATTER JURISDICTION……………………………………... 22


CONCLUSION……………………………………………………………………… 24

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Baoanan v. Baja*, 627 F.Supp.2d 155 (SDNY 2009)................................ 12

*ILC Corp. v. Latino Newspaper, Inc.*, 747 F. Supp. 85 (D.C. 1990).............. 23

*Flores-Figueroa v. U.S.*, 556 U.S. 646, 129 S.Ct. 1886,
173 L.Ed.2d 853 (2009)............................................................................ 21

*Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d. 1 (2005).......... 20

*United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct 1130,
16 l.Ed.2d 218(2005)............................................................................... 23

*U.S. v. Bonestroo*, Slip Copy, 2012 WL 13704 (D.S.D)........................... 15,16

*U.S. v. Jungers*, Slip Copy, 2011 WL 6046495 (D.S.D.).......................... 8, 11

*Velez v. Sanchez*, 754 F.Supp.2d 488 (EDNY 2010)............................... 13

### **STATUTES AND OTHER AUTHORITIES**

18 U.S.C. § 1589 ..................................................................... 9

18 U.S.C. § 1590 ..................................................................... 9

18 U.S.C. § 1591 ..................................................................... 9

18 U.S.C. § 1591(a) ......................................................... *passim*

18 U.S.C. § 1591(e)(5) ........................................................ 10

18 U.S.C. § 1595(a)........................................................ *passim*

28 U.S.C. § 1331.......................................................... *passim*

28 U.S.C. § 1332......................................................... *passim*

Fed. R. Civ. P. 12(b)(1) ………………………………………………… 2

Fed R. Civ. P. 12(b)(6) ………………………………………………. 2

Trafficking Victims Protection Act of 2000, Pub. L. no. 106-386 (2000)……. *passim*

Trafficking Victims Protection Reauthorization Act of 2003,
Pub. L. no. 108-193 (2003)…………………………………………… 9

Trafficking Victims Protection Reauthorization Act of 2005,
Pub. L. no. 109-164 (2006)……………………………………….. *passim*

William Wilberforce Trafficking Victims Protection
Reauthorization Act of 2008, Pub. L. no. 110-457 (2008)……………………… 9

## PRELIMINARY STATEMENT

Defendant Lawrence Taylor respectfully submits this memorandum of law in support of his motion to dismiss the first Cause of Action of the Complaint filed November 28, 2011 (the "Complaint")[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that Plaintiff failed to state a claim upon which relief can be granted.  Defendant further moves to dismiss the second and third Causes of Action of the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction.

Lawrence Taylor ("Mr. Taylor") is a retired football player.  He resides in Pembroke Pines, Florida and occasionally visits the New York City area for work purposes. Mr. Taylor arrived in New York on May 5, 2010 for business.

Mr. Taylor had been in New York two weeks prior to May 5, 2010.  During that time a friend asked Mr. Taylor if he was interested in "female companionship." Mr. Taylor answered "no." Two weeks later on May 5, 2010 Mr. Taylor's friend yet again, suggested some "company" for Mr. Taylor, later that evening.   Succumbing to his friend's offer, Mr. Taylor finally responded, "yes" that he would like some companionship and returned to his hotel room and fell asleep.

A female (later identified as Plaintiff to this action) entered Mr. Taylor's room awakening him. Mr. Taylor's hotel room was dimly lit; the only source of light was from the hotel television set.   The two began conversing: Plaintiff verbally informed Mr. Taylor that she was nineteen (19) years old and that her name was "Carmen;" Plaintiff then left the room to make a phone call and freely returned several moments later. Upon

---

[1] A copy of the Complaint is annexed as Exhibit A to the accompanying affirmation of Arthur L. Aidala dated January 13, 2012 ("Aidala Aff").

her return, Mr. Taylor and Plaintiff had consensual relations.   Thereafter, Plaintiff demanded payment and Mr. Taylor complied, paying her three-hundred dollars.  Plaintiff exited the room and Mr. Taylor went back to sleep.

Mr. Taylor was next awakened by police officers who entered into his room without an arrest or search warrant.  Mr. Taylor was arrested and charged with state crimes.  Mr. Taylor was not charged by any Federal authorities and, in particular, Mr. Taylor was not charged under the Trafficking Victims Protection Act.

Prior to his arrest, Mr. Taylor had no knowledge of the individual later identified as "Rasheed Davis."  Mr. Taylor never spoke, conspired, transacted or met with Mr. Davis; in fact, the first time Mr. Taylor heard the name "Rasheed Davis" was on the morning of Mr. Taylor's arrest.

Mr. Taylor was shocked and confused.  He did not understand why he was being arrested for having consensual relations with Plaintiff who had verbally and assertively identified herself as being of legal age to consent. Plaintiff lied about her age so Mr. Taylor would have relations with her and, consequently, Mr. Taylor was not informed of the Plaintiff's true age until he was arrested.

## STATEMENT OF FACTS

Mr. Taylor is a resident of Pembroke Pines, Florida and is fifty-three (53) years old. He is a retired professional football player. During his entire professional career he played for the New York Football Giants. Mr. Taylor is not a human trafficker, nor has he ever been accused of being one. Additionally, he has never transacted business with or gained any benefit from a human trafficker.

In the beginning of May 2010, Mr. Taylor traveled to New York State for an autograph signing session. Mr. Taylor was staying at the Holiday Inn Suffern, located at 3 Executive Blvd, Suffern, NY 10469. While visiting New York, Mr. Taylor's friend asked him if he was interested in "female companionship." On the night of May 5, 2010, several weeks after his friend's initial inquiry, Mr. Taylor responded "yes," he was interested in having a "female companion," informing his friend that the female could join Mr. Taylor in his hotel room if she wanted.

Christina Fierro ("Plaintiff"), Plaintiff in the above action, is a resident of Reading, Pennsylvania. Prior to becoming a resident of Pennsylvania, Plaintiff ran away from home at age fifteen (15). When Plaintiff was nearly seventeen (17) years old she began living with Rasheed Davis, Mr. Davis' girlfriend (known as "Innocence") and Venessa Santillan. Ms. Santillan was approximately twenty-three (23) years old in May of 2010.

Plaintiff and Ms. Santillan were dancers who worked in various strip clubs in Brooklyn and the Bronx. In order to gain admittance into eighteen (18) and twenty-one (21) and over strip clubs and bars, Plaintiff repeatedly lied about her age to managers and

to patrons.  In addition to fabricating her age Plaintiff continually and habitually lied about her name, insisting that she was named "Carmen."

Additionally, Plaintiff entered into an arrangement with Rasheed Davis that for cheap living expenses and car rides to and from work she would go on prearranged "dates" with men and have consensual sexual relations with them.  Plaintiff was not forced or threatened into this agreement.

On May 5, 2010 a third party informed Rasheed Davis that Mr. Taylor was looking for "female companionship."  Recognizing an opportunity to make money for himself, Rasheed Davis contacted Plaintiff and told her to get ready for an arranged date.  Plaintiff, Rasheed Davis and Ms. Santillan traveled, in the same vehicle, to Suffern New York to the Holiday Inn and took the Tappan Zee Bridge because it was the most convenient and time efficient route over the Hudson River.  Consequently, Plaintiff, Mr. Davis and Ms. Santillan did not cross state lines on their way to Suffern.

During the early morning hours of May 6, 2010, a female entered into Mr. Taylor's hotel room while he was asleep; this individual was Christina Fierro, the Plaintiff in the above action.  The room was dim; the only light was from a television set that was on when Plaintiff entered the room.  Plaintiff woke Mr. Taylor and informed him that she was there to see him.  Plaintiff let down her hair, which at the time was long, dark and curly.  Mr. Taylor did not see any marks, bruises, bumps or blood on Plaintiff's face or body.  Plaintiff did not cry at any point during her meeting with Mr. Taylor.

After Plaintiff stirred Mr. Taylor, the two began conversing. Mr. Taylor did not disclose his identity, but Plaintiff informed him that she knew who he was because she was a New York Giants fan.  Mr. Taylor asked Plaintiff how old she was and she verbally

responded nineteen (19) years old.  At some point, before engaging in consensual relations, Plaintiff stepped outside the room to make a phone call.  Mr. Taylor did not object, stop, prevent or threaten Plaintiff from leaving the room.  After making the phone call Plaintiff returned to Mr. Taylor's room upon her own free will.

Thereafter, Plaintiff and Mr. Taylor began engaging in consensual relations.  Mr. Taylor did not force himself upon Plaintiff.  He was neither aggressive nor forceful.  When they completed having consensual relations, Plaintiff demanded payment and Mr. Taylor gave her three hundred dollars.

Plaintiff then left the hotel and went back to the vehicle she traveled in to get to Suffern New York.  Both Rasheed Davis and Ms. Santillan were waiting in the vehicle.  Plaintiff informed them that she received three hundred dollars and that she did not have penetrating sexual contact with Mr. Taylor.

When Plaintiff, Davis and Ms. Santillan arrived back at their residence, undercover police officers were waiting for them.  Rasheed Davis was arrested, Plaintiff was taken away in an ambulance and Ms. Santillan was taken to a precinct in Rockland County.  Rasheed Davis was charged with violating the Trafficking Victims Protection Act, along with numerous other charges.  Rasheed Davis has since plead guilty and is serving prison time.

In the early morning of May 6, 2010 police officers entered into Mr. Taylor's hotel room and arrested him without a warrant.  Mr. Taylor was charged with two E class felonies: Rape in the third degree and criminal sexual act in the third degree; and three misdemeanors: endangering the welfare of a child, patronizing a prostitute and two counts of sexual abuse.

6

Mr. Taylor plead to patronizing a prostitute and sexual misconduct, receiving six (6) years of probation on the patronizing prostitute charge and three (3) years of probation on the sexual misconduct charge, both probation sentences are being served concurrently.   Mr. Taylor was <u>not</u> charged with violating any provisions under the Trafficking Victims Protection Act.

To date, Mr. Taylor has never met, spoken with, transacted with, seen or heard from Rasheed Davis.   Mr. Taylor is not a human trafficker. He has never transacted business with or gained any benefit from a human trafficker.

## ARGUMENT

**I.    THE TRAFFICKING VICTIMS PROTECTION ACT 18 U.S.C. 1595(a) IS WHOLLY INAPPLICABLE TO MR. TAYLOR.**

The Trafficking Victims Protection Act ("TVPA") is wholly inapplicable to Mr. Taylor because Mr. Taylor was <u>not</u> aware of human trafficking and the purpose of the civil claim or right, under the TVPA, is to allow a civil cause of action against individuals who <u>are</u> aware of human trafficking.   The cannons of statutory construction and legislative purpose clearly dictate that 18 U.S.C. §1595(a) does not apply to Mr. Taylor in the instant complaint.

**A.    18 U.S.C. 1595(a) is not applicable to Mr. Taylor because he did not "participate in a venture" with a person that he knew was acting in violation of the Trafficking Victims Protection Act.**

18 U.S.C. 1595(a) is <u>not</u> applicable to Mr. Taylor firstly, because Mr. Taylor did not "participate in a venture" with a person that he knew was acting in violation of the TVPA and therefore is <u>not</u> participating in human trafficking within the plain meaning of the TVPA.

The plain meaning of 18 U.S.C. 1595(a) must be construed literally.   "When interpreting a statute, a court's objective is to give effect to Congress' intent, and the starting point must be the plain language of the statute." (*U.S. v. Jungers*, 2011 WL 6046495 (D.S.D)) (quoting *Watson v. Ray*, 192 F.3d 1153, 1155-1156 (8th Cir. 1999) When read literally, the language in §1595(a), which allows victims of the TVPA to bring civil claims, does not apply to Mr. Taylor.

The TVPA was enacted in 2000[2] and thereafter reauthorized in 2003[3], 2005[4] and 2008, (re-titled as the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008[5]) and was up for reauthorization as of 2011[6]. Under the Trafficking Victims Reauthorization Act of 2003, "victims were given a civil cause of action against their traffickers...though it limited the availability of those actions to traffickers who had committed sex trafficking, labor trafficking, or forced labor."[7]

Under the Reauthorization Act of 2008, Congress enhanced the claim for a civil remedy enacted in 2003 for victims. In the One-Hundred Tenth Congress of the United States of America, at the second session §221(2)(A) Congress amended Chapter 77 of title 18 United States Code by deleting the language "of section 1589, 1590 or 1591" and inserting "whoever ***knowingly*** benefits, financially or by receiving anything of value from ***participation in a venture*** which that person ***knew or should have known*** has engaged in an act in violation of this chapter." (*emphasis added*) Sections 1589, 1590 and 1591 are the sections of "Forced Labor," "Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor," and "Sex Trafficking of children or by force, fraud or coercion" respectively.[8] Consequently, these amendments were enacted "to demonstrate Congress' commitment to protecting victims and prosecuting traffickers."[9]

---

[2] Public Law 106-386 – Oct. 28th, 2000
[3] Public Law 108-193 – Dec. 19th, 2003
[4] Public Law 109-164 – Jan. 10th, 2006
[5] Public Law 110-457 – Dec. 23rd, 2008
[6] As of this date the bill has not been made a Public Law. Majority votes are still needed by both the House of Representatives and the Senate before being passed to the President.
[7] Theodore R. Sangalis, *Elusive Empowerment: Compensating the Sex Trafficked Person Under the Trafficking Victims Protection Act*, 80 Fordham L. Review. 403 (2011)
[8] 18 U.S.C. §§ 1589, 1590, 1591
[9] Theodore R. Sangalis, *Elusive Empowerment: Compensating the Sex Trafficked Person Under the Trafficking Victims Protection Act*, 80 Fordham L. Review. 403 (2011)

Congress defines venture under 18 U.S.C. § 1591(e)(5) as "any group of two or more individuals *associated in fact*, whether or not a legal entity."[10]   Webster's dictionary defines "venture" as "an undertaking involving chance, risk, or danger; especially: a speculative business enterprise."[11]

Under a literal statutory construction analysis, Mr. Taylor did not "participate in a venture" with a person that he knew was acting in violation of the TVPA because Mr. Taylor never spoke, conspired or transacted with Rasheed Davis: a convicted human trafficker. Mr. Taylor's friend, a third party, asked if he wanted female companionship and Mr. Taylor merely accepted a third party's invitation for a female companion. Mr. Taylor merely accepted a third party's invitation to have female companionship.

Mr. Taylor never entered into a business "venture" or "transaction" under the plain meaning of 18 U.S.C. 1595(a).   The statutory language plainly intends an "association of fact" between the trafficker and individual. An "association of fact" did not exist between Mr. Taylor and Mr. Davis because Mr. Taylor had never met nor heard of Rasheed Davis until his arrest.

Additionally, Mr. Taylor did <u>not</u> have <u>actual</u> or <u>constructive</u> <u>knowledge</u> that Plaintiff may have had a cause of action under the TVPA against Rasheed Davis. Mr. Taylor remained in New York for the entirety of his visit and had no reason to believe that Rasheed Davis would become involved in Mr. Taylor's business trip to New York. Mr. Taylor was not aware, nor did he have any reason to believe, that his friend may have contacted an individual who would contact a female out of state or bring a female across state lines.

---

[10] 18 U.S.C. § 1591(e)(5)

[11] Definition of Venture from Webster Dictionary Online: http://www.merriam-webster.com/dictionary/venture?show=1&t=1325776563

The Act clearly intends "for knowledge of trafficking, even if constructive."[12] Mr. Taylor did not have any actual knowledge or reason to believe that Plaintiff may have been the victim of a human trafficking crime committed by Rasheed Davis.

**B.      Congress did not intend to penalize individuals like Mr. Taylor under 18 U.S.C. §1595(a)**

The Legislative purpose of 1595(a) is not directed toward penalizing Mr. Taylor. The purpose of the TVPA is to allow victims of human trafficking to bring a civil claim against the individuals <u>directly</u> responsible for placing them into the stream of forced human labor.

In determining a statute's meaning "we must not be guided by a single sentence or member of a sentence but look to the provisions of the whole law, and to its object and policy." *U.S. v. Jungers*, 2011 WL 6046495 (quoting *U.S. Nat Bank of Ore. v. Indep. Ins. Agents of America, Inc.* 508 U.S. 439, 455, 113 S.Ct. 2173, 124 L.Ed.2d 402) (1993) (quoting *United States v. Heirs of Boisdore*, 8 How. 113, 122, 12 L.Ed. 1009 (1850)) Neither the object nor the policy of §1595(a) apply to Mr. Taylor because the policy of the Act is to give victims of the TVPA redress against the individuals who trafficked them, or the individuals who profited through some type of business venture with the traffickers, and Mr. Taylor is not identified by either of these categories.

Congress was aware of the obstacles victims faced when attempting to bring a cause of action against individuals participating in human trafficking. Allowing victims of human trafficking to bring civil suits against the individuals who had jeopardized their lives and well being gave victims an opportunity to file a cause of action against the individuals who were directly responsible for placing them into a life of peonage.

---

[12] Theodore R. Sangalis, *Elusive Empowerment: Compensating the Sex Trafficked Person Under the Trafficking Victims Protection Act*, 80 Fordham L. Review. 403 (2011)

11

Originally, the TVPA only applied to certain trafficking violations and forced labor. Under the Trafficking Victims Protection Reauthorization Act of 2005, Congress began focusing on domestic trafficking. This was largely viewed as an improvement because it increased the spectrum of protection to include victims of human trafficking within the United States as well.

Through its various amendments, Congress clearly designated the group of people it intended to affect under the statute: traffickers and people knowingly participating in business with traffickers. Mr. Taylor is not part of this group. Rasheed Davis is part of this group. Congress would have included customers in the statute if their intention was for individuals like Mr. Taylor to be civilly liable; it follows that §1595(a) is wholly inapplicable to Mr. Taylor.

A recent case where the civil remedy of the TVPA did apply is *Baoanan v. Baja*, 627 F.Supp.2d 155 (2009). In *Baoanan*, Plaintiff alleged that Defendants falsely lured her into the United States with promises that they would help her find employment as a nurse, but instead forced her to work as a servant in their household. Plaintiff "worked approximately 126 hours a week...[Defendants] limited her meals to leftovers...[Plaintiff] was forced to sleep in basement with only one sheet, prevented her from leaving the household unaccompanied, and verbally abused and denigrated her." *Id.*, at *159.

Mr. Taylor's brief encounter with Plaintiff is markedly different from that of Plaintiff in *Baoanan*. Mr. Taylor did not lure or even request that Plaintiff come to his hotel. He did not prevent her from leaving the hotel. (as is noted in Plaintiff's

Complaint,[13] attached as Ex A., when she left the room to make a phone call and then returned without any force or threat by Mr. Taylor.)  Finally, Mr. Taylor did not abuse or denigrate Plaintiff. (as is noted in Ex. C., where Plaintiff admitted that "Mr. Taylor was not aggressive nor was he forceful in his conduct and was respectful at all times.)

Mr. Taylor's conduct is more parallel, although not entirely, to that of defendants in *Velez v. Sanchez*, 754 F.Supp.2d 488 (2010), where the civil claim under §1595(a) did not apply.  In *Velez*, the Court found that although the Plaintiff alleged she was trafficked from Ecuador and forced to work in her stepsister's home, the Defendants did not subject her to any forced labor or human trafficking.  The Court in *Velez, supra*, found "verbal abuse is not actionable under §1595 unless it carries with it a threat of force or serious harm.  By her own admission, [Plaintiff] never feared physical harm from [Defendants] because neither threatened her with such harm." *Id.*, at *498

Mr. Taylor did not lure or make any false promises to the Plaintiff to come to the hotel the night in question.  It is Plaintiff's own admission dated July 19, 2010 (See Ex. C) that Mr. Taylor was respectful with his conduct towards her at all times.  Mr. Taylor, during their brief encounter, did not threaten or intimidate Plaintiff.  Plaintiff felt comfortable the entire time, even stepping out of the room and returning.  Civil redress under §1595(a) was intended against defendants like the Bajas, not Mr. Taylor.  Further, in keeping with the Court's Analysis in *Velez, supra*, the TVPA does not apply to Mr. Taylor.

### C. Plaintiff's Complaint fails to allege the necessary statutory elements required in 18 U.S.C. 1595 and Plaintiff's failure is intentional and prejudicial to the Defendant.

---

[13] Complaint ¶ 21

13

This Court should note that Plaintiff's Complaint intentionally omits specific language under the statute because the plain meaning does not apply to Mr. Taylor. Plaintiff's Complaint alleges "18 U.S.C. §1595(a) permits a victim of an offense under Section 1591 to bring a civil action against the perpetrator of the crime." (Complaint ¶ 34) 18 U.S.C. §1595(a) states:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever KNOWINGLY benefits, financially or by receiving anything of value from PARTICIPATION IN A VENTURE which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United State* and may recover damages and reasonable attorney fees." (*emphasis added*)

Plaintiff does not cite the full language of the statute in the Complaint because it does not apply to Mr. Taylor.  Section 1595(a) is the only authority Plaintiff has to bring a civil suit under the TVPA.  Without the language in §1595(a) this Court would have no Federal Question jurisdiction pursuant to 28 U.S.C. § 1331 to hear any of Plaintiff's allegations.

Furthermore, Plaintiff <u>intentionally</u> misconstrues the facts in the Complaint to paint an inaccurate picture of Mr. Taylor.  Plaintiff attempts to mislead the court to believe that the TVPA was enacted to protect against individuals like Mr. Taylor. However, Mr. Taylor was not charged with, convicted, or plead guilty to any violations of the TVPA.

Specifically, Plaintiff attempts to mislead the Court when she refers to Mr. Taylor as a "perpetrator of the crime."[14]  Mr. Taylor is not a "perpetrator of the crime"[15] because the statute defines, and case law suggests that the perpetrators are human traffickers.

---

[14] Complaint ¶ 34
[15] Complaint ¶ 34

14

Regardless of how malevolent Plaintiff depicts Mr. Taylor, §1595(a) of the TVPA does not apply to the instant case.

Rather than filing a civil suit against Rasheed Davis, a convicted human trafficker responsible for placing Plaintiff into a life of forced labor, Plaintiff files suit against Mr. Taylor. In the past eight (8) years the statute has been enacted, not one claim has been filed under §1595(a) for violations of §1591(a). Plaintiffs are trying to use this lack of precedent to find Mr. Taylor civilly liable even though it is not the intent of Congress.

### D.    18 U.S.C. §1591(a) is not applicable to Mr. Taylor because "customers" are intentionally excluded from the statute.

Mr. Taylor is not a member of the class of individuals that §1591(a) intends to punish. 18 U.S.C. §1591(a) is the criminal portion of the TVPA. This section of the Act does not give victims authority to bring civil suits. Instead it provides authority for federal prosecutors to charge traffickers and individuals that have knowledge of trafficking with violating the federal statute.

According to this section of the TVPA,

"Whoever knowingly – in or affecting interstate or foreign commerce…recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or – benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud and coercion described in subsection (e)(2)…will be used to cause the person to engage in a commercial sex act, or that person has not attained the age of 18 years and will be caused to engage in a commercial sex act"

Congress did <u>not</u> intend for customers to be included under the TVPA. In a very recent case, in which the Court considered the construction and application of the TVPA, the Court noted that, "the entire language and design of the statute as a whole indicates that it is meant to punish those who are the providers or pimps of children, not the

purchasers or johns." *U.S. v. Bonestroo*, 2012 WL 13704 (D.S.D)  If the statute is taken

as a whole under the "traditional canon of construction *noscitur a sociss*, dictat[ing] that

words grouped in a list should be given a related meaning" Id at *4 (quoting *Dole v.

United Steelworkers of Am.*, 494 U.S. 26, 36 (1990)) it is clear that customers or johns are

<u>not</u> meant to be charged under the TVPA. The *Bonestroo* Court goes on to say:

> When the verbs in the list are viewed together and with their related
> meaning, it is evidence that each verb represents a potential step in the process of
> engaging in a child sex trafficking business.  The first step in the child sex
> trafficking business is to bring these children into the trafficker's control.  These
> traffickers can "recruit" children by lying about the work they will be doing or
> "enticing" them into the sexual servitude enterprise by luring them with financial
> reward.  Next the original trafficker, may "harbor" or provide refuge to this
> trafficked child in preparation for sale or movement within the operation.  Then
> the source trafficker will "transport" the child from his or her home community to
> a brothel, another trafficker, or another country.  These children will then be
> "provided" to receiving traffickers, like distributors, brothel owners, or pimps
> who want to "obtain" the trafficked children for their own localized business,
> which can be connected to or independent from the original trafficking
> organization.  Finally, a brothel, pimp, or sex trafficking enterprise "maintains"
> these children as child prostitutes."[16]

The criminal statute was enacted to charge traffickers and those who knowingly

benefitted in a business transaction with the traffickers; Mr. Taylor is not part of this

group and therefore the statute is inapplicable to him.  Customers or "johns" are not

intended by the statute.  If Congress wanted to include customers they should and easily

could have included it in the list of numerous verbs that were inserted in the amendments.

This statute gives authority to Federal Prosecutors to prosecute human traffickers.  It does

not give authority to victims to bring civil claims against individuals that Congress

clearly did not intend to include under the statute.

---

[16] *U.S. v. Bonestroo*, 2012 WL 13704 (D.S.D)

## II.   THIS COURT LACKS SUBJECT MATTER JURISDICTION TO HEAR PLAINTIFF'S FIRST CAUSE OF ACTION – VIOLATING §1591(a) OF THE TRAFFICKING VICTIMS PROTECTION ACT

This Court should dismiss Plaintiff's first Cause of Action, alleged in Plaintiff's Complaint, due to lack of Subject Matter Jurisdiction because the Plaintiff did not cross state lines en route to Mr. Taylor's hotel room and because Mr. Taylor did not knowingly participate in a venture affecting interstate commerce.

### A.   Mr. Taylor did not cross state lines for purposes of human trafficking and Plaintiff did not cross state lines in order to reach Mr. Taylor

Mr. Taylor did not travel to New York for the purpose of participating in a venture dealing with human trafficking. Additionally, Mr. Taylor did not knowingly cause a trafficker to cross state lines. Therefore Plaintiff's Complaint cannot be filed in Federal District Court because Mr. Taylor did not affect interstate commerce. Plaintiff did not cross state lines in order to meet Mr. Taylor in his hotel room and thus Plaintiff did not travel interstate.

The TVPA gives authority to the Federal government to bring criminal charges against traffickers who forcibly traffic humans into the United States for their own financial gain. Under the Trafficking Victims Protection Reauthorization Act of 2005, the statute amended certain provisions "to enhance penalties against trafficking within the United States. For the first time the reauthorization was focusing on domestic trafficking."[17]

Consequently, Congress's enumerated power under the Commerce Clause[18] led to the following amendment under the TVPA §1591(a):

---

[17] Theodore R. Sangalis, *Elusive Empowerment: Compensating the Sex Trafficked Person Under the Trafficking Victims Protection Act*, 80 Fordham L. Review. 403 (2011)

[18] United States Constitution (Article I, Section 8, Clause 3)

"Whoever knowingly – in or affecting interstate or foreign commerce, or within

the special maritime and territorial jurisdiction of the United States"[19]

Interstate commerce is defined as,

> "Interstate commerce means trade, traffic, or transportation in the United States—
> (1) Between a place in a State and a place outside of such State (including a place
> outside of the United States);(2) Between two places in a State through another
> State or a place outside of the United States; or(3) Between two places in a State
> as part of trade, traffic, or transportation originating or terminating outside the
> State or the United States."[20]

Congress, in plain language, made it clear, that the Federal government has

authority to bring criminal charges against violators of this statute only if they knowingly

cross state lines thereby affecting commerce or if the violators knowingly caused a

trafficker to cross state lines thereby affecting interstate commerce.

Mr. Taylor traveled to New York for the purposes of an autograph signing

session. It was not his intent, in traveling to New York, to participate in any transaction

with a human trafficker. Further, Mr. Taylor did not knowingly participate in a

transaction with a human trafficker.

Plaintiff did not cross state lines in order to reach Mr. Taylor, nor did Mr. Taylor

knowingly have anyone, let alone a trafficker, commit human trafficking across state

lines, thereby affecting interstate commerce.

The lack of Plaintiff's evidence coupled with the sworn statement by an eye

witness makes it clear that Plaintiff did not cross state lines the night in question, thereby

not traveling interstate. On the night of May 5, 2010, Plaintiff was located in the vicinity

of 215th St. and Laconia Avenue, Bronx, NY 10469. Mr. Taylor was staying at the

Holiday Inn Suffern, now known as the Crowne Plaza Suffern, located at 3 Executive

---

[19] William Wilberforce Trafficking Victims Reauthorization Protection Act §1591(A)(1) (2008)
[20] Code of Federal Regulations Title 49 §390.5

Blvd, Suffern N.Y. 10901.  Both locations are in New York.  There are two convenient and time efficient routes when traveling from 215th St. and Laconia Ave Bronx, New York to Suffern, New York.  The first route is along Interstate 87 North, which ultimately crosses the Hudson River via the Tappan Zee Bridge.   The second route is along Interstate 287 North, which also crosses the Hudson River via the Tappan Zee Bridge. There are other options to get from Plaintiff's location in the Bronx to Suffern New York. One possible way to cross state lines going from the Bronx to Suffern New York would be to cross the George Washington Bridge.  To do this, the driver must first go south, cross into New Jersey, begin to head north on the Palisades, and then merge onto either Interstate 87 North or Interstate 287 North, which the driver could have taken from the start in New York.  It would be extremely inconvenient as it is not the direct route and normally heavier with traffic.  Although hypothetically there are driving routes between Plaintiff's location and Defendant's location that could cross state lines, in the instant case, as evidenced by the sworn affidavit attached as Exhibit B – State lines were not crossed as the direct route, over the Tappan Zee Bridge was taken. (See Ex. B)

Venessa Santillan lived with Plaintiff, Rasheed Davis and his girlfriend in May of 2010.  She lived with Plaintiff for a few weeks prior to the night in question.  Both she and Plaintiff were dancers at various strip clubs in the Bronx and Brooklyn.   Ms. Santillan was twenty-three (23) years old at the time in question.  On May 10th, 2010, Ms. Santillan gave a sworn video affidavit at the law offices of Baratta, Barata & Aidala LLC and Aidala & Bertuna PC.  (See Ex. B)  She came to the law offices on her own freewill. She was not paid or threatened to give any sworn testimony nor did she have any interest in the outcome of the case.  This sworn testimony was given five (5) days after the night

19

in question.   The sworn testimony was given long before any civil attorneys began coaching and instructing parties what to say and how to behave.

During her sworn Affidavit, Ms. Santillan swore that she traveled with both Plaintiff and Rasheed Davis to the hotel where Plaintiff was supposed to meet MR. Taylor. Ms. Santillan testified that the three of them crossed the Tappan Zee Bridge to arrive at Suffern, New York. (See Ex. B)  Crossing the Tappan Zee Bridge is the most logical and convenient route to take from Plaintiff's location, especially if Plaintiff and Davis were in a rush to get to the hotel.  There is no evidence to the contrary.  It should be noted that at ¶ 17 of the Complaint "Upon information and belief, Davis and [Plaintiff] crossed state lines through New Jersey to reach their destination."  Plaintiff never swore that they crossed the George Washington Bridge.  Nor is there mention of any bridge in the Complaint. As the Court can duly realize, the Plaintiff did not sign the Complaint.

## B. Mr. Taylor did not affect interstate commerce because he did not knowingly enter into a venture with a human trafficker

Mr. Taylor could not violate the statute without knowingly entering into a business transaction with the trafficker regardless of whether it affected interstate commerce or not.  Mr. Taylor did not have knowledge of any actions that would have affected interstate commerce. Further, Mr. Taylor's brief encounter with Plaintiff did not have an effect on interstate commerce because Plaintiff did not leave the state immediately before or after her encounter with Mr. Taylor.

Although interstate commerce can be affected even when the illegal activity is merely intrastate in nature, (See *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d. 1 (2005))  the plain meaning of the statute requires that Mr. Taylor have

20

knowledge of the effect on interstate commerce, not just that interstate commerce was affected.

The recent Supreme Court case *Flores-Figueroa v. U.S.*, 556 U.S. 646, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009) determines how to interpret a criminal statute that uses the word "knowingly." The Court found that "Courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word "knowingly" as applying that word to each element." *Id.*, at *1891. It follows that, "where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." *Id.*, at *1890. Mr. Taylor was incapable of having knowledge of the affect on interstate commerce. Mr. Taylor did not know Rasheed Davis and never entered into a business venture with him.

Additionally, Mr. Taylor and Plaintiff's transaction was incapable of having an effect on interstate commerce. His actions had nothing to do with "trade, traffic and transportation"[21] under the meaning of interstate commerce. He paid for a service from a person that was located in the same state.

Mr. Taylor did not have an affect on interstate commerce, however, if this Court is inclined to find that his action did have an effect on interstate commerce, Mr. Taylor did <u>not</u> have any <u>actual</u> or <u>constructive</u> <u>knowledge</u> that he affected interstate commerce.

Congress amended §1591(a)(2) inserting an objective mens rea element "knowing, or in reckless disregard of the fact"[22] clearly specifying the <u>required</u> mens rea for this part of the statute. This demonstrates that Congress was aware when amending

---

[21] Code of Federal Regulations Title 49 §390.5
[22] 18 U.S.C. § 1591(a)(2)

the statute that the word "knowingly" applied to all parts of the statute that didn't specify a particular mens rea, including "affecting interstate or foreign commerce."[23]  It is clear that for someone to be in violation of the TVPA they had to knowingly affect interstate commerce.   The statute is inapplicable without knowledge of affecting interstate commerce and the first Cause of Action must be dismissed.

## III.   PLAINTIFF'S STATE CLAIMS SHOULD BE DISMISSED DUE TO LACK OF SUBJECT MATTER JURISDICTION.

Plaintiff's state claims should be dismissed because she does not allege an amount in controversy and therefore does not meet the requirements for Federal Diversity Jurisdiction pursuant to 28 U.S.C. §1332.

Plaintiff alleges two State claims in her Complaint and relies on 28 U.S.C. §1331 (Federal Question) and 28 U.S.C. §1332 (Diversity) for Federal Court Jurisdiction. Plaintiff wholly, and incorrectly, relies on alleged violations of the Federal Trafficking Victims Protection Act to meet the Federal Question requirement.  The Federal Question action, however, fails for the aforementioned reasons and with it fails Plaintiff's claim to federal jurisdiction under Federal Question doctrine.  Accordingly, there is no basis for §1331 Federal Question jurisdiction.

Federal Diversity Jurisdiction is based on two (2) elements:

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
      (1) citizens of different States;"[24]

Plaintiff and Mr. Taylor meet the requirements of subsection (a)(1) of the statute. Plaintiff is currently residing in Pennsylvania, and Mr. Taylor is currently a citizen of

---

[23] 18 U.S.C. § 1591(a)(1)
[24] 28 U.S.C. §1332

Florida.  However, Plaintiff does not allege any amount of damages in the Complaint which is required under subsection (a).  Plaintiff merely claims "the matter in controversy exceeds the sum of seventy five thousand dollars" (Complaint ¶ 6) without making any allegation of the amount of damages.  Plaintiff requests relief in compensatory and punitive damages to be determined at trial. (¶ Prayer for Relief (a) and (b))

Similarly, in *ILC Corporation v. Latino Newspaper* the Court considered an amended complaint which did "not even plead any amount whatsoever for the nonfederal claims...it seeks "[d]amages in an amount which may be proved at trial."" *ILC Corporation v. Latino Newspaper, Inc.,* 747 F. Supp. 85, 86-87 (holding that "Plaintiff's amended complaint, which did not plead any amount whatsoever for nonfederal claims, failed to satisfy amount in controversy requirement for diversity jurisdiction following dismissal of federal claims.")

There is no Diversity Federal jurisdiction pursuant to 28 U.S.C. 1332 without explicit damages alleged in the Complaint.  Even in light of the fact that there is no Federal Jurisdiction pursuant to 28 U.S.C. §§ 1331 and1332, if the Court determined that the state claims should remain in Federal Court due to supplemental jurisdiction, there is case law that suggests pendant claims should be dismissed. "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs,* 338 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218  Therefore, Plaintiff's second and third Causes of Action should be dismissed due to lack of Subject Matter Jurisdiction.

## CONCLUSION

The Complaint should be dismissed for failure to state a claim where relief can be sought because the Trafficking Victims Protection Act is wholly inapplicable to Mr. Taylor and all the Causes of Action of the Complaint should be dismissed for lack of subject matter jurisdiction.

Dated:        New York, New York
              January 13, 2012

Baratta, Baratta & Aidala LLP

By:_____
       Arthur L. Aidala
546 5th Avenue
New York, NY 10036
Phone: (212) 750-9700
Fax: (212) 750-8297
*Attorney for Defendant*
*Lawrence Taylor*

24