UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CRISTINA FIERRO

       Plaintiff,     Index No.:
               1:11-cv-08573-BSJ

 - against –

               Hon. Barbara S. Jones
LAWRENCE TAYLOR

       Defendant.
------------------------------------------------------------------------x

## DEFENDANT LAWRENCE TAYLOR'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO DISMISS COMPLAINT

## TABLE OF CONTENTS

Page(s)

INTRODUCTION..................................................................................................1

ARGUMENT

    I.    THE STATUTE IS WHOLLY INAPPLICABLE TO MR. TAYLOR BECAUSE CONGRESS DID NOT INTEND FOR CUSTOMERS OR "JOHNS" TO BE INCLUDED IN §1591(a)(1)................................................................................... 1

    II.    PLAINTIFF IS NOT ENTITLED TO ANY CIVIL RELEIF FROM MR. TAYLOR UNDER 1595(a) BECAUSE MR. TAYLOR DID NOT VIOLATE §1591(a)(1)........................................ 6

    III.    PLAINTIFF HAS FAILED TO SUFFICIENTLY PLEAD THAT THE AMOUNT IN CONTROVERSY EXCEEDS THE STAUTORY AMOUNT FOR THE STATE CLAIMS AND THEREFORE THERE IS NO DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. §1332...................... 8

CONCLUSION.................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Dolan v. U.S. Postal Service*, 546 U.S. 481, 486, 126 S.Ct. 1252,
163 L.Ed.2d 1079 (2006).................................................................... 2

*ILC Corporation v. Latino Newspaper, Inc.*, 747 F. Supp. 85 (D.C. 1990)............ 8

*Massachusetts v. Morash*, 490 U.S. 107, 115, 109S.Ct. 1668, 104 L.Ed.2d 98
(1989)............................................................................................ 4

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555,
95 L.Ed.2d 39 (1987).......................................................................... 4

*Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1,8, 105 S.Ct. 2458,
86 L.Ed.2d 1 (1985)........................................................................... 2

*Securities Industry Assn. v. Board of Governors*, 468 U.S. 207, 218,
104 S.Ct. 3003, 82 L.Ed.2d 158. (1984).................................................. 2, 3

*United States. v. Bonestroo*, CR 11-40016-01-KES, 2012 WL 13704
(D.S.D., 2012).................................................................................. 3

*United States v. Mikoloyck*, No. 09-00036-01-CR-W-GAF,
2009 WL 4798900 (W.D. Mo., 2009)....................................................... 4

*United States v. Roberts*, 174 F. App'x 475 (11th Cir. 2006)........................... 4

*United States v. Strevell*, 185 Fed. App'x 841 (11th Cir. 2006)......................... 4

## STATUTES AND OTHER AUTHORITIES

18 U.S.C. § 1591(a)(1).................................................................... *Passim*

18 U.S.C. § 1591(a)(2).................................................................... 7

18 U.S.C. § 1595(a)........................................................................ *Passim*

22 U.S.C. § 1331............................................................................ 8

22 U.S.C. § 1332............................................................................ 8

## INTRODUCTION

In 2000 Congress enacted the Trafficking Victims Protection Act ("TVPA"). In enacting this law Congress addressed the growing epidemic of human trafficking. Humans were being trafficked internationally for purposes of slavery, forced labor and sexual abuse. The purpose of the law was to punish human traffickers and provide assistance to trafficked victims. The Office of Refugee Resettlement stated in State Letter 01-13: "The law aims to combat trafficking through increased law enforcement, to *ensure effective punishment of traffickers*, to protect victims and to provide Federal and State assistance to victims."[1] (Emphasis added)

Section 1591(a)(1) of the TVPA prohibited sex trafficking of children or by force, fraud or coercion. This law was not enacted to punish customers of sex or "johns." Instead the law was aimed at punishing the traffickers who forced and coerced adults into sex slavery and who trafficked children into sex slavery.

## I. THE STATUTE IS WHOLLY INAPPLICABLE TO MR. TAYLOR BECAUSE CONGRESS DID NOT INTEND FOR CUSTOMERS OR "JOHNS" TO BE INCLUDED IN §1591(a)(1).

Plaintiff argues that §1591(a)(1) applies to Mr. Taylor because he "obtained" and "maintained" her the night they met. However, Plaintiff's argument is flawed because Congress did not intend for the words "obtain" and "maintain" to encompass customers of sex or "johns." Instead, Congress enacted this statute to prevent sex trafficking of underage victims or victims that were being forced, coerced or threatened into engaging in commercial sex acts.

---

[1] U.S. Department of Health and Human Services. Administration for Children and Families. 2001. Office of Refugee Resettlement. 3 May 2001. http://www.acf.hhs.gov/programs/orr/policy/sl01-13.htm

1

Section 1591(a)(1) of the TVPA reads as follows:

(a)"Whoever knowingly—
(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or"

A statute should be read in its entirety when determining the statute's meaning. The Supreme Court in *Dolan v. U.S. Postal Service*, 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006) found that "Interpretation of a word or a phrase depends upon reading the whole statutory text, considering the purpose and context of the statute…" The words "Obtain" and "maintain" do not provide the statute's full meaning under Congress' intent. Congress included a long list of verbs when drafting the statute. These verbs clearly relate to different stages of a sex trafficking scheme, the very thing Congress was trying to prevent under §1591(a)(1). Neither with the respect to the individual verbiage nor to the intent of the statutory scheme as a whole do the words "obtain" and maintain" relate to the facts and circumstances of this case. Mr. Taylor was merely a "john" and was not "obtaining" or "maintaining" Plaintiff for purposes of sex trafficking. The facts and circumstances of his status as a "john" was clearly not the type of conduct that the statute intended to protect. Plaintiff incorrectly reads the statute to apply to customers of sex and "johns" and therefore argues that "obtaining" and "maintaining" an individual is sufficient to violate §1591(a)(1). This interpretation of the statute is improper and Plaintiff's statutory interpretation contrasts with United States Supreme Court authority.

When interpreting a statute "it is a familiar principle of statutory construction that words grouped in a list should be given related meaning." *Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1,8, 105 S.Ct. 2458, 86 L.Ed.2d 1 (1985); (quoting *Securities*

*Industry Assn. v. Board of Governors,* 468 U.S. 207, 218, 104 S.Ct. 3003, 82 L.Ed.2d 158. (1984)) It follows that the verbs in the statute should be read in conjunction with one another to form Congress' intent; namely preventing human trafficking. Congress criminalized the sex trafficking operation by listing the different verbs to represent different stages of the sex trafficking operation. Mr. Taylor is not part of this group and therefore the statute is inapplicable to him.

Customers or "johns" are not intended by the statute. If Congress wanted to include customers they should and easily could have included it within the language of the statute. Further, Congress could have stated in the committee notes or legislative history that the TVPA should be strictly enforced against customers of sex of "johns." However, Congress did not do either of the above. Instead the TVPA gives authority to Federal Prosecutors to prosecute human traffickers. It does not give authority to victims to bring civil claims against individuals that Congress clearly did not intend to include under the statute. This interpretation was the finding in *U.S. v. Bonestroo*, CR 11-40016-01-KES, 2012 WL 13704 (D.S.D., 2012). The Court found:

> "When the verbs in the list are viewed together and with their related meaning, it is evidence that each verb represents a potential step in the process of engaging in a child sex trafficking business. The first step in the child sex trafficking business is to bring these children into the trafficker's control. These traffickers can "recruit" children by lying about the work they will be doing or "enticing" them into the sexual servitude enterprise by luring them with financial reward. Next the original trafficker, may "harbor" or provide refuge to this trafficked child in preparation for sale or movement within the operation. Then the source trafficker will "transport" the child from his or her home community to a brothel, another trafficker, or another country. These children will then be "provided" to receiving traffickers, like distributors, brothel owners, or pimps who want to "obtain" the trafficked children for their own localized business, which can be connected to or independent from the original trafficking organization. Finally, a brothel, pimp, or sex trafficking enterprise "maintains" these children as child prostitutes."

3

Additionally, Plaintiff's argument fails because The U.S. Supreme Court has found "in expounding a statute, we [are] not ... guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989); (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987)).  It is important to have the words "obtain" and "maintain" in the statute to prevent those particular stages of the sex trafficking scheme.  This clearly does not mean that every customer of sex is guilty of violating §1591(a)(1) of the TVPA.  The policy behind enacting §1591(a)(1) of the TVPA was to prevent sex trafficking through means of force, fraud and coercion or sex trafficking of children.  Plaintiff is mistaken in her argument because she stretches the statute past Congress' intent and applies it to customers of sex or "johns."

Any interpretation of §1591(a)(1) of the TVPA different from the *Bonestroo* Court is undoubtedly mistaken.  When reading the statute's plain meaning and construing the statute as a whole coupled with Congress' intent to prevent human trafficking, the *Bonestroo* Court's interpretation is the only possible proper reading of §1591(a)(1).

Furthermore, Plaintiff cites only three non-controlling cases attempting to show that "johns" were convicted under §1591(a)(1).  These cases are *United States v. Roberts*, 174 F. App'x 475 (11th Cir. 2006); *United States v. Strevell*, 185 Fed. App'x 841 (11th Cir. 2006); and *U.S. v. Mikoloyck*, No. 09-00036-01-CR-W-GAF, 2009 WL 4798900 (W.D. Mo., 2009).  The defendants in these cases were child molesters and sexual predators proactively participating in the sex trafficking scheme.  They were not "johns" looking to have consensual relations one evening, as was Mr. Taylor.

In *Roberts*, the defendant responded to an advertisement called "Costa Rica Taboo Vacations" to engage in sex with underage Costa Rican girls that was in reality a sting operation. Over a period of months, the defendant negotiated and paid for a trip to Costa Rica, in which he believed he would be meeting females aged 16. The defendant ultimately canceled his trip, but made a deal with the undercover agents to have the underage females transported to America to engage in sexual activity with them. Defendant was caught and arrested once he traveled to the Marriot Hotel in the Miami International Airport and paid the undercover agents. He was charged under §1591(a)(1) of the TVPA.

The Defendant in *Strevell* responded to the same "Costa Rica Taboo Vacations" advertisement. Throughout June 2004, defendant made numerous phone calls with whom he thought was the owner of the vacation spot, but was really an undercover agent. During these phone calls, defendant requested to have sexual encounters with females between the ages of 14 and 15. Defendant then flew to Florida where he believed he would catch a connecting flight and travel to Costa Rica. After arriving in Florida and receiving his boarding pass for a flight to Costa Rica, defendant was arrested and charged under §1591(a)(1) of the TVPA.

Again in *Mikoloyck* defendant was charged under §1591(a)(1) of the TVPA after being caught in a sting operation. In *Mikoloyck* defendant observed an advertisement he found on craigslist.com. The advertisement provided for sexual encounters with underage females. Defendant responded to the advertisement requesting a female, age 16, by emailing an undercover agent. Thereafter, defendant made numerous phone calls

to the agent attempting to set up a date and meeting place. Defendant was arrested once he went to the agreed upon meting place.

All three defendants are sexual predators, and proactively worked with human traffickers for purposes of sex trafficking. These are exactly the type of people the TVPA was enacted to punish. The defendants sought underage females by continuously requesting and demanding sexual encounters. The defendants were entered into the sex trafficking scheme by their repeated and unwavering attempts to engage in sexual encounters with underage females. Section 1591(a)(1) of the TVPA is entitled "Sex Trafficking of Children, or by Force, Fraud or Coercion." Clearly these sexual deviants were after children. To include Mr. Taylor or any customers of sex in a class with these sexual predators is outrageous. Mr. Taylor sought out female companionship; he did not make steadfast attempts to engage in sexual conduct with known underage females. Section 1591(a)(1) of the TVPA clearly does not apply to Mr. Taylor and other one night customers of sex or "johns."

II. **PLAINTIFF IS NOT ENTITLED TO ANY CIVIL RELEIF FROM MR. TAYLOR UNDER 1595(a) BECAUSE MR. TAYLOR DID NOT VIOLATE §1591(a)(1).**

Section 1595(a) of the TVPA allows victims of the TVPA civil redress against the perpetrators of the crimes or against individuals who knowingly benefited from participating in a venture with a sex trafficker. Section 1595(a) was enacted in 2003 and reads as follows:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in

6

an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

Plaintiff concedes in her MOL in Opp. to Taylor's motion to dismiss the Complaint that the parenthetical section of §1595(a) does not apply in the instant case. Plaintiff writes

> "since 2008, the language of §1591 and §1595 have paralleled one another; §1591(a)(1) is incorporated into the principal text of §1595(a), while §1591(a)(2) is incorporated into the parenthetical clause in §1595(a)." See MOL in Opp. page 9

Plaintiff has argued in her MOL in Opp. that Plaintiff could have pled under either 1591(a)(1) or 1591(a)(2), but elected to plead only under 1591(a)(1). (Supra p. 9) As Plaintiff has admitted in her MOL in Opp. that only 1591(a)(1) applies because this is the section which the Complaint relies upon, Plaintiff is therefore only entitled to relief under 1595(a) if she can establish that Taylor violated the principal text of 1595(a), namely that he was "the perpetrator" of the crime committed against Plaintiff.

Mr. Taylor is clearly not "the perpetrator" of the crime as written and intended by Congress under §1595(a). First, Mr. Taylor was not criminally charged under §1591(a)(1) by the Federal government. Mr. Taylor was charged and pled guilty to other crimes, none of which had anything to do with the TVPA. After an investigation the Federal government did not see it appropriate to charge Mr. Taylor under the TVPA because he did not violate any provisions of TVPA.

Rasheed Davis, on the other hand, was charged by the Federal government and pled guilty to violating the TVPA. Davis is the definition of "the perpetrator" as Congress intended it. Davis violated the statute by performing all the verbs listed under 1591(a)(1) and knew both that Plaintiff had not attained the age of 18 and that he would use force against her if she did not comply with his demands. Davis is civilly liable to

Plaintiff under 1595(a), however, Plaintiff chose not to bring suit against Davis. Instead, Plaintiff incorrectly filed suit against Mr. Taylor for reasons one can only assume. Maybe it is because of the national media attention that a suit against Mr. Taylor sparks or the allure of deep pockets; both of which a suit against Davis would not bring forth. However, we know this lawsuit was not filed against Mr. Taylor to correct an injustice as the statute does not allow for civil redress against individuals like Mr. Taylor; that is individuals that have not violated 1591(a)(1).

Finally, Plaintiff fails to cite any authority which finds defendants civilly liable under 1595(a) for violations of 1591(a)(1). In fact, in the past eight (8) years 1595(a) has been enacted, not one claim has been filed for civil redress for violation of 1591(a)(1). Accordingly Plaintiff wishes to use this lack of precedent to find Mr. Taylor civilly liable, even though it is not Congress' intent. To allow such a lawsuit to proceed would be against Congress' intent and would open the floodgates to the District Courts with improper and unfounded lawsuits.

III. **PLAINTIFF HAS FAILED TO SUFFICIENTLY PLEAD THAT THE AMOUNT IN CONTROVERSY EXCEEDS THE STAUTORY AMOUNT FOR THE STATE CLAIMS AND THEREFORE THERE IS NO DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. §1332.**

Plaintiff argue that they maintain federal jurisdiction under 28 U.S.C. §§ 1331 and 1332, federal question jurisdiction and diversity jurisdiction respectively. Federal question jurisdiction fails if this Court finds that Mr. Taylor did not violate the TVPA. Diversity jurisdiction fails because Plaintiff did not sufficiently plead that the amount in controversy exceeds the statutory amount, namely $75,000.00. The Court in *ILC Corporation v. Latino Newspaper, Inc.*, 747 F. Supp. 85 (D.C. 1990) held that "Plaintiff's

8

amended complaint, which did not plead any amount whatsoever for nonfederal claims, failed to satisfy amount in controversy requirement for diversity jurisdiction following dismissal of federal claims." If the Court finds that the TVPA does not apply to Mr. Taylor then the state claims must be dismissed because Plaintiff has not alleged that the amount in controversy for the state claims exceeds the sum of $75,000.00

## CONCLUSION

The Complaint should be dismissed because the TVPA is wholly inapplicable to Mr. Taylor and the state claims should be dismissed for failure to sufficiently allege jurisdiction pursuant to 28 U.S.C. 1332.

Dated:  New York, New York   Baratta, Baratta & Aidala LLP
        February 24, 2012

By: /s/ Arthur L. Aidala
    Arthur L. Aidala
    546 5th Avenue
    New York, NY 10036
    Phone: (212) 750-9700
    Fax: (212) 750-8297
    *Attorney for Defendant*
    *Lawrence Taylor*